UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| | USDC SDNY |
| | DOCUMENT |
| | ELECTRONICALLY FILED |
| | DOC #: _____ |
| | DATE FILED: _3/25/2014_ |

TYRONE ROSADO,

                              Plaintiff,

          - against -

DAPHNEE HERARD,

                              Defendant.

**MEMORANDUM
OPINION & ORDER**

12 Civ. 8943 (PGG) (FM)

PAUL G. GARDEPHE, U.S.D.J.:

            Pro se Plaintiff Tyrone Rosado brings this action, pursuant to 42 U.S.C. § 1983,

alleging that Defendant Daphnee Herard – a mental health clinician at Rikers Island – violated

his constitutional, statutory, and common law rights by denying him and other Spanish-speaking

detainees at the George R. Vierno Detention Center at Rikers Island access to "therapeutic group

sessions," and by disclosing to other detainees that Rosado has H.I.V.  (Cmplt. (Dkt. No. 2); Am.

Cmplt. (Dkt. No. 25))  Defendant has moved to dismiss the Complaint.  (Dkt. No. 30)  In an

August 28, 2013 order, this Court referred the motion to Magistrate Judge Frank Maas for a

Report and Recommendation ("R&R").  (Dkt. No. 35)  On November 25, 2013, Judge Maas

issued a 25-page R&R recommending that the Court grant Defendant's motion in part and deny

it in part.  (Dkt. No. 42)  For the reasons stated below, this Court will adopt the R&R in part and

modify it in part.

## BACKGROUND[1]

Rosado is a pre-trial detainee in the custody of the New York City Department of Correction at Rikers Island.  (Dkt. No. 52)  On July 17, 2012, Rosado was assigned to the Rikers Island Mental Health Assessment Unit for Infracted Inmates (the "Mental Health Unit" or the "Unit").  (Am. Cmplt. (Dkt. No. 25) ¶ 6)  Rosado suffers from bipolar disorder and anti-social personality disorder, as well as H.I.V.  (Pltf. Affirm. (Dkt. No. 36) at 7)  Defendant Herard – a licensed mental health clinician – is responsible for treating detainees, such as Rosado, who are confined in punitive segregation in the Unit.  (Amended Cmplt. (Dkt. No. 25) ¶ 5)

While Rosado was in the Unit, he was denied access to "therapeutic group sessions."  (Id. ¶ 7)  According to Rosado, other inmates – "mainly Spanish speaking detainees" like himself – were also prohibited from participating in these sessions.  (Id.)  Rosado complained to Herard about being "denied access to his therapeutic group sessions," but received no response.  (Id. ¶¶ 8-9)  He then filed a complaint against Herard through the facility's Inmate Grievance and Request Program ("I.G.R.P."), challenging the denial of access to group sessions. (Id. ¶ 10)

Herard was informed of Rosado's grievance, which alleged that she was "discriminating against Spanish speaking mental health detainees by den[y]ing them their right to parti[]cipate in [the group] therapeutic treatment."  (Id. ¶ 11)  Herard visited Rosado in his cell and "inquired as to why he [had filed] a grievance."  (Id. ¶ 12)  Rosado responded by asking Herard why "only African American[ ] inmates [were] allow[ed] to attend . . . group session[s] an[d] not Spanish speaking inmates."  (Id.)  Defendant then "became [agitated] and [belligerent]"

---

[1]  The Court's factual statement is drawn from Plaintiff's Complaint and Amended Complaint. Plaintiff's factual allegations are presumed to be true for purposes of resolving a motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

and "stated out loud that [Rosado was] just mad because [he was] on the verge of dying because he[']s (H.I.V.-positive)." (Id. ¶ 13)

After this exchange, other detainees asked Herard about her encounter with Rosado. (Id. ¶ 14) Herard told these inmates that "Rosado was indeed H.I.V.-positive." (Id.) As a result, Rosado's medical condition "became known throughout the prison." (Id. ¶ 16) Rosado alleges that, because of Herard's disclosures, he suffered "psychological episodes of mental anguish" in the form of "depression, insomnia, scornful [harassment], headaches, inability to [concentrate], fatigue, [and] loss of appetite"; "became annoyed [continually]"; was "a target of gossip [and r]umor[,] as well as harassment by prisoners which might lead to inmate on inmate violence"; and suffered anxiety and panic attacks. (Id. ¶ 17)

Rosado's original complaint, dated November 27, 2012, was received by the Pro Se Office on December 7, 2012. (Cmplt. (Dkt. No. 2)) On July 19, 2013, Defendant filed a motion to dismiss. (Dkt. Nos. 29, 30) On July 31, 2013, Rosado filed an Amended Complaint. (Am. Cmplt. (Dkt. No. 25)) Defendant has requested that her motion to dismiss be deemed to address the Amended Complaint. (Dkt. No. 29)

On August 28, 2013, this Court referred the motion to Magistrate Judge Maas for a Report and Recommendation ("R&R"). (Dkt. No. 35) On November 25, 2013, Judge Maas issued an R&R concerning the motion. (Dkt. No. 42)

Reading Rosado's pleadings liberally, Judge Maas concluded that Rosado had asserted claims under (1) the Privacy Act, 5 U.S.C. § 552A; (2) the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d et seq.; (3) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; (4) the Rehabilitation Act, 29 U.S.C. § 794 et seq.; (5) the First Amendment; (6) the Fourteenth Amendment; and (7) New York state law.

Rosado v. Herard, No. 12 Civ. 8943 (PGG) (FM), 2013 WL 6170631, at *3 (S.D.N.Y. Nov. 25, 2013). Judge Maas determined that Rosado's First Amendment retaliation claim, his ADA and Rehabilitation Act claims – to the extent they seek non-monetary relief against Herard in her official capacity – and his state law claims should be permitted to proceed. Id. at *11. Judge Maas recommended that Rosado's remaining claims be dismissed. Id.

On December 4, 2013, Rosado filed objections to the R&R. (Dkt. No. 48) Rosado argues that Judge Maas erred in concluding that Rosado's Fourteenth Amendment deliberate indifference and equal protection claims should be dismissed. This Court construes Rosado's objections as including the argument that Judge Maas erred in not addressing his "state-created danger" theory of liability under the Fourteenth Amendment. In submissions dated December 9, 2013, and January 21, 2014, Defendant objects to the R&R, arguing that the Amended Complaint should be dismissed in its entirety. (Dkt. Nos. 44, 50)

## DISCUSSION

### I.   LEGAL STANDARD

#### A.   Review of Magistrate Judge's Report and Recommendation

In evaluating a Magistrate Judge's R&R, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to an R&R, "[the district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. "'[T]o the extent . . . that the [objecting] party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (quoting IndyMac Bank, F.S.B. v. Nat'l Settlement Agency,

4

Inc., No. 07-CV-6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008)).

Although "[t]he objections of parties appearing pro se are 'generally accorded leniency' and

should be construed 'to raise the strongest arguments that they suggest,' . . . even a pro se

party's objections to a Report and Recommendation must be specific and clearly aimed at

particular findings in the magistrate's proposal, such that no party be allowed a second bite at the

apple by simply relitigating a prior argument." Id. at 340 (quoting Milano v. Astrue, No. 05 Civ.

6527 (KMW) (DCF), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008)).

　　　　　Here, Rosado's objections to the Magistrate Judge's findings concerning his

deliberate indifference and equal protection claims lack specificity.  Rather than addressing the

Magistrate Judge's analysis, Rosado simply reiterates his arguments that "Defendant Daphnee

Herard deliberately and recklessly retaliated against Plaintiff for daring to file a grievance

against the Defendant" and acted "with deliberate indifference to his physical safety."  (Pltf.

Objections (Dkt No. 48) at 3)  Moreover, Rosado has not objected to the Magistrate Judge's

recommendation that other claims in the Amended Complaint should be dismissed.

Accordingly, these portions of Judge Maas's R&R will be reviewed for clear error.  See Gilmore

v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb.

18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212

(S.D.N.Y. 2003)) ("'The district judge evaluating a magistrate judge's recommendation may

adopt those portions of the recommendation, without further review, where no specific objection

is made, as long as they are not clearly erroneous.'").

　　　　　In her objections, Herard contends that Judge Maas erred in concluding that (1)

Rosado has stated a claim under the ADA and Rehabilitation Act; (2) Rosado has adequately

pled a First Amendment retaliation claim; and (3) Rosado's state law claims should not be

dismissed.  (Def. Objections (Dkt. No. 44) at 4-12)  Because Defendant has made specific

arguments addressing Judge Maas's findings, the portions of the R&R relevant to these issues

will be reviewed de novo.

**B.**     **Motion to Dismiss Standard**

Defendant has moved to dismiss the Amended Complaint for failure to state a

claim under Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)).  "In considering a motion to dismiss . . . the court is to accept as true all facts

alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead

Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable

inferences in favor of the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir.

2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of

'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and

does not provide factual allegations sufficient "to give the defendant fair notice of what the claim

is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507

F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

Because Rosado is proceeding pro se, this Court is required to read his complaint

liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be

liberally construed.'") (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Accordingly, this

Court will construe Rosado's pleadings "'to raise the strongest arguments that they suggest.'"

Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83

(2d Cir. 2001)). "Moreover, [factual] allegations made in a pro se plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss." Braxton v. Nichols, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010). However, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)).

## II.    PLAINTIFF'S PRIVACY ACT & HIPAA CLAIMS WILL BE DISMISSED

This Court finds no error in Judge Maas's recommendation that Rosado's Privacy Act and HIPAA claims be dismissed.

"[U]nder the Privacy Act, a plaintiff may file a suit against an agency, and not an individual . . . [I]ndividual officers are not proper parties to a Privacy Act action." Mandel v. U.S. Office of Pers. Mgmt., 244 F. Supp. 2d 146, 153 (E.D.N.Y. 2003); see also Young v. Tryon, No. 12-CV-6251-CJS-MWP, 2013 WL 2471543, at *5 (W.D.N.Y. June 7, 2013) ("[T]he Privacy Act does not provide for a cause of action against individuals."); Williams v. McCausland, 791 F. Supp. 992, 1000 (S.D.N.Y. 1992) ("The Privacy Act authorizes suits only against 'agencies' and not individuals."). Accordingly, Rosado's Privacy Act claim against Herard must be dismissed.

"HIPAA does not provide for either an express or implied private right of action." Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am., 639 F. Supp. 371, 377 (S.D.N.Y. 2009); see also Mascetti v. Zozulin, No. 3:09-CV-963 (PCD), 2010 WL 1644572, at *4 (D. Conn. Apr. 20, 2010) ("Enforcement of [HIPAA] and its regulations is limited to the Secretary of Health and Human Services; thus, there is no private right of action."); Barnes v.

Glennon, No. 9:05-CV-0153 (LEK) (RFT), 2006 WL 2811821, at *6 (N.D.N.Y. Sept. 28, 2006)

("[T]here is no private cause of action stemming from HIPAA.")  Accordingly, Rosado has no

claim against Herard under HIPAA.

      The Court adopts Judge Maas's recommendation that Rosado's Privacy Act and

HIPAA claims be dismissed.

## III.   PLAINTIFF'S ADA AND REHABILITATION ACT CLAIMS WILL BE DISMISSED

      Judge Maas concluded that Rosado has no claim against Herard in her individual

capacity under either the ADA or the Rehabilitation Act, and that Rosado may not seek monetary

damages against Herard in her official capacity under these statutes.[2]  Rosado, 2013 WL

---

[2]  Rosado has no claim against Herard in her individual capacity under these statutes.  "[N]either
Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits
against state officials." Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d
Cir. 2001); Keitt v. New York City, 882 F. Supp. 2d 412, 426 (S.D.N.Y. 2011) ("Individuals in
their personal capacities are not proper defendants on claims brought under the ADA or the
Rehabilitation Act.") (citing Harris v. Mills, 572 F.3d 66, 72-73 (2d Cir. 2009)).

Less clear is whether claims for monetary damages are available against Herard in her official
capacity.  The Second Circuit has held that "a private suit for money damages under Title II of
the ADA may only be maintained against a state if the plaintiff can establish that the Title II
violation was motivated by either discriminatory animus or ill will due to disability." Garcia,
280 F.3d at 112.  Some courts in this District have extended this holding to individuals sued in
their official capacities.  See Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 411 (S.D.N.Y. 2006),
on reconsideration on other grounds, 452 F. Supp. 2d 328 (S.D.N.Y. 2006) ("Since the ADA
permits official capacity suits, [plaintiff] can pierce Defendant's claim of state sovereign
immunity and recover money damages under Title II, provided he satisfies the standard set forth
in [United States v. Georgia, 546 U.S. 151 (2006)]."); see also Johnson v. Goord, No. 01 Civ.
9587 PKC, 2004 WL 2199500, at *19 (S.D.N.Y. Sept. 29, 2004) ("[P]laintiffs' claims against the
individual defendants in their official capacities under section 504 of the Rehabilitation Act and
Title II of the ADA fail because those laws do not provide for money damages against the state
or state officials in their official capacities, absent a showing that any violation was motivated by
discriminatory animus or ill will due to the disability.").

Other courts have concluded that monetary damages are available against individuals in their
official capacities under the ADA, but not under the Rehabilitation Act.  See Gowins v. Greiner,
No. 01 Civ. 6933 (GEL), 2002 WL 1770772, at *5 (S.D.N.Y. July 31, 2002) ("[Plaintiff] may

6170631, at *4.  Accordingly, the R&R recommends that Rosado's claims under these statutes be dismissed, except to the extent that they seek injunctive relief against Herard in her official capacity.  See id.

      This Court concludes, however, that Rosado's ADA and Rehabilitation Act claims must be dismissed in their entirety.  "In order to state a claim under the ADA, a prisoner must establish that: '(1) he or she is a "qualified individual with a disability"; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program, or activity is a public entity.'"  Allah v. Goord, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005) (quoting Hallett v. New York State Dep't of Corr. Servs., 109 F. Supp. 2d 190, 198 (S.D.N.Y. 2000)).  "The requirements for stating a claim under the ADA are virtually identical to those under § 504 of the Rehabilitation Act."  Clarkson v. Coughlin, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995).

> To state a claim for relief under section 504 of the Rehabilitation Act, an inmate must show that:
>
> (1)    he is a "qualified individual with a disability";
>
> (2)    he is "otherwise qualified" to participate in the offered activity or program or to enjoy the services or benefits offered;
>
> (3)    he is being excluded from participation or enjoyment solely by reason of his disability; and

---

not sue DOCS under . . . the Rehabilitation Act at all, and may sue DOCS under the ADA only to the extent that the alleged violation resulted from discriminatory animus based on his disability.").

This Court need not resolve the official capacity issue here.  Even reading Plaintiff's pleadings liberally, he has not asserted that he was denied access to therapeutic group sessions because of a disability.

(4)     the entity denying the inmate participation or enjoyment receives federal
financial assistance.

<u>Allah</u>, 405 F. Supp. 2d at 274-75 (quoting 29 U.S.C. § 794).

The Second Circuit has noted that "the ADA and Rehabilitation Act are addressed to 'rules . . . that hurt [people with disabilities] <u>by reason of their handicap</u>.'" <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 276 (2d Cir. 2003) (emphasis and alteration in original). "In other words, there must be something different about the way the plaintiff is treated 'by reason of . . . [his or her] disability.'" <u>Id.</u> (quoting 42 U.S.C. § 12132). Accordingly, "[c]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." <u>Elbert v. New York State Dep't of Corr. Servs.</u>, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (collecting cases).

In concluding that Rosado has stated an ADA claim, the R&R points to Rosado's assertion that he asked Defendant "'why he [was] being denied access' to 'therapeutic group session[s] that detainees are entitled to under the directive ([reasonable] accommodation for people with mental/[physical] disabilities).'" <u>Rosado</u>, 2013 WL 6170631, at *4 (quoting Am. Cmplt. (Dkt. No. 25) ¶ 8). In the Amended Complaint and in his opposition papers, Rosado states that Herard

> <u>discriminated against Spanish speaking mental health detainees</u> by refusing them the right to participate in their therapeutic group session[s]. The Plaintiff argues that he was discriminate[d] against because he has been stigmatize[d] by his race & disability. The log-book will show that . . . Plaintiff . . . & his two neig[h]bors . . . name[d] Richard Logo & Christian Jimenez never came out for group session[s] but on the [other] hand nothing but African-Americans [attended therapeutic group sessions].

(Pltf. Br. (Dkt. No. 36) at 6) (emphasis added); <u>see also</u> Am. Cmplt. ¶ 11 (alleging that Herard was "discriminating against Spanish speaking mental health detainees by den[y]ing them the right to participate in their therapeutic treatment"))

10

While Rosado alleges that he was discriminated against when he was denied therapeutic group services, he asserts that the basis of this discrimination was his ethnicity, not a disability. His conclusory statement that he was "stigmatized" for his "disability" offers no factual basis to conclude that he was treated differently than prisoners without mental health conditions (or who were not H.I.V.-positive). See Iqbal, 556 U.S. at 678 ("naked assertion[s] devoid of further factual enhancement" are insufficient to state a claim) (internal quotations omitted). He does not allege, for example, that prisoners who did not suffer from mental health conditions, or who were not H.I.V.-positive, were allowed to participate in therapeutic group sessions, while he was not. See Harnett v. Fielding Graduate Inst., 400 F. Supp. 2d 570, 576 (S.D.N.Y. 2005) (quoting Felix v. N.Y.C. Transit Auth., 324 F.3d 102, 107 (2d Cir. 2003)) ("[These] statutes . . . 'mandate[ ] reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled.'").

The facts alleged by Rosado indicate that the therapeutic group sessions were intended for mental health detainees. Defendant, of course, is a mental health clinician who is "responsible for the welfare of . . . mental health detainees." (Am. Cmplt. (Dkt. No. 25) ¶ 5) When Defendant confronted Rosado regarding the grievance he had filed against her, Rosado asked, "Why is it that only African American[ ] inmates are allow[ed] to attend [ ] group sessions and not Spanish speaking inmates? . . . [A]ll mental health inmates should be permitted to participate in this program." (See id. ¶ 12) The fact that certain detainees with mental illness were allowed to participate in group therapy, while other detainees with mental illness were not, does not demonstrate that Rosado was discriminated against "because of" his mental illness or some other medical condition.

Rosado has not pleaded facts demonstrating that he was denied access to therapeutic group sessions because of a disability.  Instead, he has pleaded facts demonstrating that he was denied access to therapeutic group sessions because of his ethnicity.  Because neither the ADA nor the Rehabilitation Act addresses discrimination based on ethnicity, Rosado's claims under these statutes must be dismissed.

## IV.   PLAINTIFF'S § 1983 CLAIMS WILL BE DISMISSED IN PART

The R&R concludes that Rosado's pleadings can be read to raise Section 1983 claims based on:  (1) the right to privacy; (2) due process; (3) deliberate indifference under the Fourteenth Amendment; (4) equal protection; and (5) First Amendment retaliation.  The R&R recommends that all of these claims be dismissed except for Rosado's First Amendment retaliation claim.  For the reasons set forth below, Judge Maas's recommendations will be adopted except as to Rosado's equal protection claim.

### A.   Right to Privacy

To the extent that Rosado asserts that Defendant violated his right to privacy by revealing his H.I.V. status to other detainees, Judge Maas concluded that Rosado had waived any such claim by disclosing that his H.I.V. status in a public court filing in Florida in 2011.[3] Rosado, 2013 WL 6170631, at *5.  This Court finds no error in this determination.  "Certainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest [in his HIV status] in matters of public record."  Doe v. City of New York, 15 F.3d 264, 268 (2d Cir. 1994); see McKinnon v. Fred, No. 306 CV 147 (JGM), 2007 U.S. Dist. LEXIS

---

[3] "In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court . . . may . . . consider matters of which judicial notice may be taken under Fed. R. Evid. 201. . . . [C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir. 1991).

59900, at *14 (D. Conn. Aug. 16, 2007) ("An inmate may waive his privacy right in his medical history through a variety of acts including . . . commencement of a lawsuit. . . . Prior to this incident, plaintiff mentioned his HIV status in documents he submitted in two of his other lawsuits. . . . Thus, he has waived his privacy right and his HIV status is a matter of public record."). Accordingly, Rosado's right to privacy claim will be dismissed.

**B.      Due Process**

This Court also finds no error in the R&R's conclusion that Rosado's "stigma plus" claim should be dismissed, because there is no allegation that Defendant made a false statement about Rosado in disclosing his H.I.V. status. <u>Rosado</u>, 2013 WL 6170631, at *6. "Loss of one's reputation can . . . invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest. . . . This type of claim is commonly referred to as a 'stigma-plus' claim." <u>Patterson v. City of Utica</u>, 370 F.3d 322, 330 (2d Cir. 2004). "[A] 'stigma plus claim' [ ] requires a plaintiff to allege . . . the utterance of a statement about [him] that is injurious to [his] reputation, 'that is capable of being proved false, and that he . . . claims is false. . . .'" <u>Velez v. Levy</u>, 401 F.3d 75, 87 (2d Cir. 2005) (quoting <u>Doe v. Dep't of Pub. Safety</u>, 271 F.3d 38, 47 (2d Cir. 2001), <u>rev'd on other grounds</u>, <u>Conn. Dep't of Pub. Safety v. Doe</u>, 538 U.S. 1 (2003)). Rosado acknowledges that he is H.I.V.-positive, and therefore Defendant's statement was not false. (Am. Cmplt. (Dkt. No. 25) ¶¶ 13-16) Accordingly, Rosado's due process claim will be dismissed.

**C.      Deliberate Indifference to Medical Needs**

Judge Maas correctly concluded that Rosado has not plausibly alleged a deliberate indifference claim. <u>Rosado</u>, 2013 WL 6170631, at *7. For purposes of such a claim, "a prison official violates the Eighth Amendment [or Fourteenth Amendment] only when two

13

requirements are met." Farmer v. Brennan, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious,' . . . [such that] a prison official's act or omission . . . result[s] in the denial of 'the minimal civilized measure of life's necessities.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991); Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "This contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." Joyner v. Greiner, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002). "The second requirement . . . [is that] a prison official . . . have a 'sufficiently culpable state of mind.' . . . In prison-conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

Rosado acknowledges that he has been receiving regular treatment for his mental health conditions and H.I.V. infection while incarcerated. (Pltf. Affirm. (Dkt. No. 36) at 18-27[4]) He does not allege that he has suffered any specific harm from being denied access to therapeutic group sessions; instead, he speculates that the denial of this service "could [cause] him harm in the present or future." (Id. at 9) Such allegations do not demonstrate "a condition of urgency . . . that may produce death, degeneration, or extreme pain." See Joyner, 195 F. Supp. 2d at 503; see also Beckford v. Portuondo, 151 F. Supp. 2d 204, 218 (N.D.N.Y. 2001) ("[E]ven accepting that Plaintiff's mental health care was far from optimum, he was provided significant psychotropic medication [and other treatment] while [incarcerated]. At most, Plaintiff disagrees with the treatment offered and alleges that he should have received . . . additional group therapy treatment. . . . Nowhere does Plaintiff allege that the failure to provide him these additional treatments resulted in an urgent threat to his life or limb or was otherwise so grossly inadequate to rise to the level of deliberate indifference.").

---

[4] The pages numbers referenced in this opinion are the numbers assigned when the document was electronically filed.

Because Rosado's factual allegations are not sufficient to plead a deliberate indifference claim, that claim will be dismissed.

**D.      Equal Protection**

Rosado's equal protection claim is based on Herard's alleged denial of group therapy sessions to him and other Spanish-speaking detainees, while providing these sessions to African American detainees.  (Am. Cmplt. (Dkt. No. 25) ¶¶ 7-12)  Judge Maas properly found that "Rosado's averments more than suffice to allege the differential treatment of a suspect class."  Rosado, 2013 WL 6170631, at *6.  "Hispanics as an ethnic group do constitute a suspect class for the purpose of equal protection analysis."[5]  Soberal-Perez v. Heckler, 717 F.2d 36, 41 (2d Cir. 1983).

The R&R recommends that Rosado's equal protection claim be dismissed, however, because of a failure to plead facts demonstrating discriminatory intent.  Rosado, 2013 WL 6170631, at *6.  Judge Maas concluded that "Rosado has alleged no facts from which the Court can infer such intent.  At most, Rosado claims that he complained to Herard about the situation and received no response."  Id.

Rosado has alleged, however, that "only African American inmates [were] allow[ed] to attend [ ] group session[s] an[d] not Spanish speaking inmates."  (Am. Cmplt. (Dkt. No. 25) ¶ 12)  Given that there is no obvious medical or administrative reason for such a

---

[5] Judge Maas correctly rejected Defendant's argument that Plaintiff alleges discrimination based on language rather than ethnicity.  See Rosado, 2013 WL 6170631, at *6.  Although Plaintiff refers to himself and certain other detainees as "Spanish speakers," he repeatedly contrasts this group with "African Americans."  (See, e.g., Am. Cmplt. (Dkt. No. 25) ¶ 12)  Accordingly, the classification Plaintiff alleges is one based on ethnicity, and not language.  This case is thus distinguishable from Soberal-Perez v. Heckler, 717 F.2d 36, 41 (2d Cir. 1983) – cited by Defendant – because in that case "[a] classification [was] . . . made . . . on the basis of language, i.e., English-speaking versus non-English-speaking individuals, and not on the basis of race, religion or national origin."

practice, discriminatory intent – at least at the pleading stage – can be inferred. See, e.g., Barnes v. Ross, 926 F. Supp. 2d 499, 506-07 (S.D.N.Y. 2013) ("Barnes alleges that minority inmates at Sullivan received mental-health care that differed from the care provided to white inmates. Specifically, he alleges that '[prison healthcare providers], would only send . . . (white) inmates to Marcy Hospital, where they[ would] get the proper treatment.  Africans & Hispanic[s] (Black[s] & Latin[os]) would sit in [the institution's on-site mental health unit] for long period[s], then [were] sent[ ] back to their cells, where they[ would] harm themselves or [try] to commit suicide.' . . . Barnes' allegations state an equal protection claim."); see also Phillips v. Girdich, 408 F.3d 124, 129-30 (2d Cir. 2005) ("[Pro se inmate's] allegations suffice to state an Equal Protection Violation . . . [where plaintiff] alleges that he and other minorities were subject to disparate treatment because of their race."); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991) ("LaBounty . . . allege[d] that similarly-situated white inmates were given work assignments without having to complete any 90-day [training] program, while LaBounty, who is black, had the additional obstacles placed in his way.  LaBounty further alleged that 'all persons assigned as institution electricians are non-Black and there are witnesses who can testify that it has been that way for the past ten (10) years that they know of.'  Thus, his complaint not only alleges that he was treated differently because of his race, but also, drawing a fair inference, that black inmates in the past have been treated differently because of their race.  We think these allegations by a pro se prisoner sufficiently set forth an equal protection claim."); Peel v. Crew, No. 96 Civ. 7154 (RWS), 1996 WL 719378, at *14 (S.D.N.Y. Dec. 13, 1996) ("To state a claim under the Equal Protection clause, and survive a motion to dismiss, plaintiff need only allege discriminatory intent generally and facts from which such intent may be inferred.").

Accordingly, this Court will not adopt the Magistrate Judge's recommendation that Rosado's equal protection claim be dismissed.  With respect to this claim, Defendant's motion will be denied.

### E.     First Amendment Retaliation Claim

Herard objects to Judge Maas's conclusion that Rosado has properly pled a First Amendment retaliation claim, arguing that this finding is "wholly at odds" with Judge Maas's finding "that Plaintiff had no right to privacy in his HIV status because he had already disclosed it." (Def. Objections (Dkt. No. 44) at 9-10)  Herard argues that because Rosado's H.I.V. status is a matter of public record, her disclosure of that information to other detainees cannot be considered an "adverse action."  (Id. at 9-12)

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following:  '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).  "These allegations may not be conclusory; they must have some basis in specific facts that are not inherently implausible on their face." Jones v. Harris, 665 F. Supp. 2d 384, 397 (S.D.N.Y. 2009).  Furthermore, "[c]ourts have been cautioned to approach First Amendment retaliation claims by prisoners with skepticism and particular care." Id. (citing Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003)).

Here, Rosado claims that he filed a grievance against Defendant alleging that she had denied him and other Spanish-speaking detainees access to therapeutic group sessions.  (Am. Cmplt. (Dkt. No. 25) ¶¶ 10-11)  "[R]etaliation against a prisoner for pursuing a grievance

17

violates the right to petition government for the redress of grievances guaranteed by the First and

Fourteenth Amendments and is actionable under § 1983." Graham v. Henderson, 89 F.3d 75, 80

(2d Cir. 1996).  Rosado has adequately alleged that he engaged in protected speech.

To satisfy the second prong, Rosado must allege facts demonstrating that Herard

"took adverse action" against him.  An "adverse action" is conduct "that would deter a similarly

situated individual of ordinary firmness from exercising his or her constitutional rights." Dawes,

239 F.3d at 493, overruled on other grounds, Swierkiewicz, 534 U.S. 506; see also Davis, 320

F.3d at 353 ("[R]etaliation against an inmate must be likely to 'chill a person of ordinary

firmness from continuing to engage' in a protected activity.") (quoting Thaddeus-X v. Blatter,

175 F.3d 378, 397 (6th Cir. 1999)).  "In making this determination, the court's inquiry must be

'tailored to the different circumstances in which retaliation claims arise,' bearing in mind that

'[p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory]

action taken against them is considered adverse." Davis, 320 F.3d at 354 (quoting Dawes, 239

F.3d at 493 (quoting Thaddeus-X, 175 F.3d at 398)) (alterations in original).

Whether Defendant's disclosure of Rosado's H.I.V. status would deter a

"similarly situated individual of ordinary firmness" from exercising his right to file a grievance

cannot be resolved as a matter of law at this stage of the proceedings.  The record does not, for

example, disclose (1) the extent to which Rosado's illness was known to other detainees prior to

Defendant's disclosures; (2) the extent to which Defendant's disclosures could have been

expected to spread through the Mental Health Unit and the larger institution, or (3) how

detainees with H.I.V. are treated by other prisoners.  Rosado has pled that "as a result of

[Herard's disclosures] . . . [his] medical condition . . . became known throughout the

prison . . . [and] he became a target of gossip [and] [r]umor as well as [harassment] by

18

prisoners." (Am. Cmplt. (Dkt. No. 25) ¶¶ 16-17)  It is a reasonable inference from the pleadings both that Rosado's H.I.V. status was not widely known to other detainees prior to Herard's disclosures, and that the disclosures led Rosado to suffer harm that might deter a similarly situated individual from filing a grievance.  "Therefore, 'at this early state, the[se] allegation[s] . . . must be construed as describing an adverse action,' and . . . [Plaintiff] 'should have the opportunity to develop facts that would demonstrate that [Herard's actions] would deter a reasonable inmate from pursuing grievances.'"  Davis, 320 F.3d at 354 (quoting Morales v. Mackalm, 278 F.3d 126, 131-32 (2d Cir. 2002)).

   With respect to causation, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001); Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir. 2001)).  Here, Rosado alleges that – after Herard learned that he had filed a grievance against her – Defendant "immediately" approached Rosado in his cell and loudly disclosed that Rosado was "on the verge of dying because he[']s H.I.V.-positive."  (Am. Cmplt. (Dkt. No. 25) ¶¶ 12-13)  Rosado further alleges that, over the next few days, Herard disclosed Rosado's H.I.V. status to several other detainees.  (Id. ¶ 14)  Assuming these allegations are true, Rosado has sufficiently alleged a causal relationship between his filing of a grievance against Herard and her adverse actions against him.  Accordingly, Defendant's motion to dismiss will be denied as to Rosado's retaliation claim.[6]

---

[6]  Defendant argues that this ruling is inconsistent with the dismissal of Plaintiff's privacy claim. This argument ignores the fact that Plaintiff's privacy and First Amendment retaliation claims involve different rights.  The retaliation claim implicates Plaintiff's freedom to engage in constitutionally protected activity – here, First Amendment speech – while Plaintiff's privacy claim is based on his "individual interest in avoiding disclosure of personal matters."  Whalen v.

**F.**     **"State-Created Danger" Claim**

In his objections to the R&R, Rosado refers to a "state-created danger" claim, alleging that Defendant "consciously, intentionally, and recklessly created a 'danger[ous] situation'" when she disclosed his H.I.V. status to other detainees.  (Pltf. Objections (Dkt. No. 48) ¶ 11)  Defendant objects to the assertion of this "entirely new theory of liability."  (Def. Reply to Pltf. Objections (Dkt. No. 50) at 3)

It is well-settled that a "complaint cannot be amended merely by raising new facts and theories in plaintiff['s] opposition papers, and hence such new allegations and claims should not be considered in resolving the motion."  Southwick Clothing LLC v. GFT (USA) Corp., No. 99 CV 10452 (GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004).  However, "[a] document filed pro se is 'to be liberally construed.'"  Erickson, 551 U.S. at 94 (quoting Estelle, 429 U.S. at 106).  "Because [plaintiff] is proceeding pro se, the Court must read his pleadings 'liberally' and interpret them 'to raise the strongest arguments' that they may suggest."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

In the Amended Complaint, Rosado alleges that he "became a target of gossip [and] [r]umor as well as [harassment] by prisoners which might lead to inmate on inmate violence."  (Am. Cmplt. (Dkt. No. 25) ¶ 17)  He also alleges that "employee[s] that work in the

---

Roe, 429 U.S. 589, 599 (1977).  While Plaintiff waived his privacy claim by filing court papers disclosing his H.I.V. status, it does not follow that he waived his right to be free of retaliation for engaging in First Amendment speech.  The relevant question for purposes of Plaintiff's retaliation claim is whether disclosure of Plaintiff's H.I.V. status to other detainees – individuals who were housed in the same facility as Plaintiff and who did not know of his medical condition – "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  Dawes, 239 F.3d at 493.  It is reasonable to infer that a similarly situated detainee might be deterred from filing a grievance if threatened with disclosure of his H.I.V. status to other detainees.  The fact that detainees in the Mental Health Unit could have learned about Plaintiff's H.I.V. status from documents filed in Plaintiff's Florida court action does not change the analysis.

correctional department" do not "ensure the safety of . . . inmates." (Id. ¶ 23)  Read liberally, the Amended Complaint may be construed as asserting a Fourteenth Amendment claim under the "state-created danger" doctrine.  Accordingly, this Court will interpret Rosado's objections as asserting that Judge Maas erred in not considering this theory of liability.

In Deshaney v. Winnebago County Department of Social Services, 489 U.S. 189, 196 (1989), the Supreme Court held that the "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Id. Accordingly, "[a]s a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197.

An exception to this principle – known as the "state-created danger" exception – provides for state liability for acts of private violence where state actors "in some way . . . assisted in creating or increasing the danger to the victim." Dwares v. City of New York, 985 F.2d 94, 98-99 (2d Cir. 1993), overruled on other grounds, Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993).  "[T]he Second Circuit has held that a claim is stated [under the state-created danger exception] where the defendant's facilitation of a private attack amounts to affirmative conduct necessary to state a due process violation." Campbell v. Brentwood Union Free Sch. Dist., 904 F. Supp. 2d 275, 280 (E.D.N.Y. 2012) (citing Pena v. DePrisco, 432 F.3d 98, 109 (2d Cir. 2005)).

Here, Rosado has not alleged that he suffered any act of violence.  Instead, Rosado claims that Defendant's disclosures "might lead to inmate on inmate violence." (Am. Cmplt. (Dkt. No. 25) ¶ 17 (emphasis added))  Absent allegations that Rosado actually was the victim of a violent act, however, he has no claim under the "state-created danger" exception. Cf.

21

Lombardi v. Whitman, 485 F.3d 73, 80 (2d Cir. 2007) ("[I]n each of those cases [where the state created danger exception was applied], a third party's criminal behavior harmed the plaintiff after a government actor . . . enhanced or created the opportunity for the criminal act.").

      Accordingly, to the extent that Rosado's due process claim is based on a theory of state-created danger, that claim will be dismissed.

### G.    Limitation of Damages under the Prison Litigation Reform Act

      Defendant argues that – to the extent that any of Rosado's claims survive her motion to dismiss – Rosado is barred from recovering compensatory damages under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), because he has not alleged a physical injury.[7]  (Def. Br. (Dkt. No. 32) at 15-16)

      Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); see also Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002) (noting that an inmate may not "recover damages for mental or emotional injury . . . in the absence of a showing of actual physical injury"); Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999) (explaining that under the PLRA, in "suits seeking damages for mental or emotional injuries," plaintiff must "make a prior showing of physical injury"); Lee v. DelFavero, No. 9:04 CV 382, 2005 WL 2387820, at *6 (N.D.N.Y. Sept. 28, 2005) (granting defendant's motion to dismiss plaintiff's claim for compensatory damages for "mental anguish and emotional distress" for failure to plead physical

---

[7] Defendant did not raise this argument in her objections to the R&R. Accordingly, to the extent that this argument concerns Plaintiff's retaliation claim, this Court will review the Magistrate Judge's determination for clear error. As to Plaintiff's equal protection claim, Judge Maas determined that that claim should be dismissed and did not reach the issue of damages. Accordingly, as to Plaintiff's equal protection claim, this Court will consider Defendant's PLRA argument de novo.

injury); Brewster v. Nassau Cnty., 349 F. Supp. 2d 540, 553 (E.D.N.Y. 2004) (granting

defendant's motion to dismiss for plaintiff's failure to allege any physical harm).

       "'If, however, the plaintiff alleges the violation of a constitutional right, the action

is not entirely barred and the plaintiff may obtain injunctive or declaratory relief, and nominal or

punitive, but not compensatory damages irrespective of any physical injury if [he] proves that

violation.'" Voorhees v. Goord, No. 05 Civ. 1407 (KMW) (HB), 2006 WL 1888638, at *9

(S.D.N.Y. Feb. 24, 2006) (quoting Lipton v. Cnty. of Orange, 315 F. Supp. 2d 434, 457

(S.D.N.Y. 2004) (citing Thompson, 284 F.3d at 418)).

       In the Amended Complaint, Rosado alleges that – as a result of Defendant's

conduct – he suffers "psychological episodes of mental anguish, such as depression, insomnia,

scornful [harassment], headaches, inability to [concentrate], fatigue, [and] loss of appetite";

"became annoyed [continually]"; "suffers from [anxiety] & panic attacks"; and is "a target of

gossip [and r]umor[,] as well as harassment by prisoners which might lead to inmate on inmate

violence." (Am. Cmplt. (Dkt. No. 25) ¶ 17) Rosado has not alleged any physical injury. (See

id.) In his prayer for relief, Rosado states that he seeks a declaration that his rights were

violated; an injunction requiring Herard to, inter alia, permit all inmates to participate in

therapeutic group sessions; $5,000 in compensatory damages; and $55 million in punitive

damages. (Id. ¶¶ 28-31).

       To the extent that Rosado seeks compensatory damages for mental or emotional

harm, that claim will be dismissed, given Rosado's failure to allege physical injury. As Judge

Maas noted, however, compensatory damages for intangible deprivations of Rosado's liberty and

personal rights – as "distinct from pain and suffering, mental anguish, and mental trauma" – are

not barred by the PLRA. Rosado, 2013 WL 6170631, at *10. The Second Circuit has held that

"[t]he damages recoverable for loss of liberty . . . are separable from damages recoverable for such injuries as physical, harm, embarrassment, or emotional suffering." Kerman v. City of N.Y., 374 F.3d 93, 125 (2d Cir. 2004). Applying Kerman, courts in this Circuit have concluded that a physical injury is not required for a prisoner to recover compensatory damages for the loss of a constitutional liberty interest. See Mendez v. Amato, No. 9:12-CV-560 (TJM/CFH), 2013 WL 5236564, at *20 (N.D.N.Y. Sept. 17, 2013) (citing Kerman, 374 F.3d at 125-26) ("The Second Circuit has determined that intangibles can serve as a basis for recovery. . . . The claims surviving defendants' motion involve the loss of such intangibles as liberty through a lack of due process and equal protection. Such claims represent those which fall outside of the physical harm requirement of the PLRA."); Malik v. City of New York, No. 11 Civ. 6062 (PAC) (FM), 2012 WL 3345317, at *16 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, No. 11 Civ. 6062 (PAC) (FM), 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012) ("[T]he PLRA's physical injury requirement does not bar an award of compensatory damages for First Amendment violations."). Accordingly, Rosado's claim for compensatory damages flowing from the loss of his liberty interests under the First Amendment and the Equal Protection Clause will proceed.

As the R&R correctly recognizes, the PLRA does not place "limitations on injunctive or declaratory relief [or] nominal and punitive damages." Rosado, 2013 WL 6170631, at *10; see Thompson, 284 F.3d at 418. Rosado is therefore entitled to pursue these remedies with respect to his remaining claims.[8]

---

[8]  Herard argues that Rosado's claims for injunctive and declaratory relief are moot because Rosado has been transferred from the Mental Health Unit at the George R. Vierno Detention Center, where the alleged events occurred. (Def. Objections (Dkt. No. 44) at 9)  "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006).

## V.   STATE CLAIMS

As to Rosado's state law claims, Herard's only argument for dismissal is that this Court should decline to exercise its supplemental jurisdiction. (Def. Reply Br. (Dkt. No. 38) at 6) However, since certain of Rosado's federal claims will survive the motion to dismiss, and given that these claims arise out of the same events and conduct as his state law claims, the state law claims will not be dismissed. See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 121-22 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(a)) ("Federal district courts have supplemental jurisdiction over state-law claims 'that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'").

## VI.   DEFENDANT'S QUALIFIED IMMUNITY ARGUMENT

In responding to Rosado's objections to the R&R, Defendant raises the defense of qualified immunity for the first time. (Def. Reply to Pltf. Objections (Dkt. No. 50) at 9-11) Because this argument was never raised in the motion papers, it will not be considered now. See Smith v. Hulihan, No. 11 CV 2948 (HB), 2012 WL 4928904, at *1 (S.D.N.Y. Oct. 17, 2012) ("[N]ew arguments . . . cannot properly be raised for the first time in objections to the R & R, and indeed may not be deemed objections at all.").

---

The rationale for this rule is that – with the prisoner's transfer – "the problem sought to be remedied has ceased, and . . . there is 'no reasonable expectation that the wrong will be repeated.'" Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) (quoting Preiser v. Newkirk, 422 U.S. 395, 402 (1975)). However, both the George R. Vierno Detention Center and the Anna M. Kross Center – where Rosado is currently housed – are Rikers Island facilities. It is not clear from the record whether Rosado continues to be under Herard's care, or will be under Herard's care again in the future, given that he is detained in a Rikers Island facility. Accordingly, Plaintiff's claims for injunctive and declaratory relief will not be dismissed as moot at this time.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is denied with respect to Plaintiff's equal protection and First Amendment retaliation claims, except to the extent that compensatory damages for mental and emotional injury are sought in connection with these claims. The motion to dismiss is granted with respect to these claims to the extent that they seek compensatory damages for mental and emotional injury. The motion is also granted with respect to Plaintiff's remaining federal claims. The motion to dismiss is otherwise denied.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 30) and to mail a copy of this Order to Tyrone Rosado, 241-11-05751, Anna M. Kross Center (A.M.K.C.) C-95, 18-18 Hazen Street, East Elmhurst, New York 11370.

Dated: New York, New York
    March 25, 2014                              SO ORDERED.

                                        *Paul Gardephe*

                                        Paul G. Gardephe
                                        United States District Judge